## FIRST STATE BANK OF DAWSON v. BRADSHAW et al.

No. 24638.   Oct. 22, 1935.

Poe, Lundy & Morgan and H. R. Duncan, for plaintiff in error.

Chas. L. Yancey, G. C. Spillers, and Donald L. Brown, for defendants in error.

PER CURIAM. This was a suit on a promissory note filed in the court of common pleas of Tulsa county, Okla. At the commencement of the action, garnishment proceedings were had and the American Exchange Bank of Collinsville, Okla., as garnishee, answered, stating that $2,093.27 was on deposit in such bank to the credit of Clark & Amis, Inc., by W. L. Clark, president, and Bob Bradshaw, trustee. Bob Brad-shaw, trustee for Clark & Amis, Inc., was later permitted to intervene in the action; the issue was joined between Bob Bradshaw, trustee, and the First State Bank of Dawson, Okla., plaintiff, as to which was entitled to the moneys, which were paid into court. The sole question involved in said action was as to which of said parties were entitled to the money.

The case was tried to the court, a jury having been waived by both parties, and resulted in a judgment in favor of Bob Bradshaw, trustee, and the court directed the clerk of the court to pay said sum of $2,-093.27 to the said intervener, Bob Bradshaw, from which judgment the plaintiff, First State Bank of Dawson, Okla., has appealed.

The parties will be referred to herein as they appeared in the trial court.

The intervener claims that the trust agreement hereafter described was valid, and enforceable against subsequent creditors, and that there is no law in this state to prevent a debtor from preferring one creditor over another. And that a garnishment reaches only the property of the principal debtor and does not reach property previously assigned to another.

The plaintiff claims that the trust agreement was not valid, and did not constitute a valid pledge because possession was not immediately, actually, exclusively, and continuously in the pledgee; that the entire contract and agreement was void as being in violation of section 6021, C. O. S. 1921, dealing with transfers of personal property.

We see no serious conflict or controversy as to the facts in the case. On February 5, 1929, Clark & Amis, Inc., were indebted to various creditors in considerable amounts and were unable to pay the accounts. They entered into a trust agreement, among other things, providing that certain drilling tools would be transferred, and were transferred, to the trustee, Bob Bradshaw; they were to be used in completing certain wells, the contracts to drill having been previously obtained, and provided that other contracts might be obtained and wells drilled. The agreement contemplated that after certain expenses were paid, the earnings were to be divided among the creditors participating in the agreement. Funds were to be carried in a trust account with the Producers National Bank of Tulsa.

Several wells were drilled; approximately $35,000 was realized therefrom. At the time of the garnishment there was a balance

of $2,093.27 on deposit; the trustee and W. L. Clark, president of Clark & Amis, Inc., having theretofore changed the depository of such funds to the American Exchange Bank of Collinsville, Okla.

The money in court by reason of the garnishment proceedings was for the earnings from oil wells, none of the personal property having been sold until after the garnishment summons in the case was served. There is nothing in the record to determine whether it was for wells that were then contracted to be drilled, or from later contracts entered into by the trustee.

After the trust agreement was entered into, the trustee employed W. L. Clark, president of Clark & Amis, Inc., as manager. He drew a salary for such services, but was actually in the physical control of the property both before and after the trust agreement was made. The trustee made one inspection trip and viewed the property, but otherwise his only actual physical control of the property was through the manager, Clark, who was also president of the corporation, Clark & Amis. Inc.

While various assignments of error are made, the position of plaintiff in error may be summed up in that the entire trust agreement is void for the reason that the trustee did not immediately go into the full possession of the property, and that by virtue of the provisions of section 6021, C. O. S. 1921, the entire transaction was fraudulent and void as to subsequent creditors.

We think there is no question that as to rigging, equipment, etc., the position of the plaintiff in error is correct, and that section 6021. C. O. S. 1921, is applicable; that the trustee in this case must have taken absolute, actual, and exclusive and continuous possession of the property. Jackson v. Kincaid, 4 Okla. 554, 46 P. 587. Also many other cases since decided by this court.

If this were a case of an attachment by a creditor of the personal property, we think such section and the decisions mentioned would leave but the question of the sufficiency of the possession taken by the trustee.

It will be noted, however, that in this case we are not concerned with the personal property involved in such trust agreement, and we deem it unnecessary to pass upon such question. The money involved in this action is the proceeds from certain contracts assigned to the trustee, and a careful examination of the trust agreement

convinces us that it is in fact an assignment of such contract; also, the proceeds from contracts to drill wells entered into thereafter by the trustee.

We have carefully examined the trust agreement and can see nothing therein contained that, as between the parties themselves, makes the contract illegal or void.

In the absence of fraud every contract of a debtor is valid against all of his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract (section 10005, O. S. 1931).

No creditor, so far as the record discloses, has ever attempted to question the agreement as to the personal property. No creditor has acquired any lien thereon. We therefore hold that, so far as this case is concerned, it is immaterial whether the trustee ever took possession of the rigging, equipment, etc.

The trust agreement assigns all interest in certain contracts of the makers, Clark & Amis, Inc., to drill oil wells, to the trustee; the agreement provides for the payment of the expenses and the pro rata disbursement of the earnings, if any. It also appears that, after the original agreement, certain other drilling contracts were entered into, at least that Bob Bradshaw, the trustee, was consulted relative to them. The negotiations for the contracts were handled by W. L. Clark, whether as manager for Bradshaw or as president of the corporation is not clear. At least, the proceeds from the earnings from the contracts to drill is the money involved in this action. It is true that but for the machinery it would have been impossible to complete the contracts, but, nevertheless, we think that in this case the situation is such that it is in fact the proceeds of the contracts to drill wells that were assigned, and the contracts were in fact completed and the money paid into the bank and deposited in a fund over which the trustee had control. We think this amounts to an assignment of the amounts that would become due, and when contracts were fulfilled it became an executed agreement, and a debt due; that the situation is the same as though the indebtedness had been due when the agreements were made.

An assignment in writing of a debt owing to a defendant free from fraud and for a valuable consideration, and prior to the service of a writ of garnishment on such debtor of defendant, gives such assignee a right to the amount of the debt, which is superior

to the claim of the garnisheeing plaintiff. El Reno Foundry & Machine Co. v. Western Ice Co., 54 Okla. 116, 153 P. 1107.

We think the rule laid down in the foregoing case is decisive of the question involved in this case, and that the judgment should be affirmed.

The judgment is hereby affirmed.

The Supreme Court acknowledges the aid of Attorneys Charles Miles, R. B. Loofbourrow, and A. S. Dickson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Charles Miles and approved by R. B. Loofbourrow and A. S. Dickson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinon was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.